```
 1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
               CASE NO. 08-20574-CRIMINAL-LENARD
 3

 4    UNITED STATES OF AMERICA,        Miami, Florida

 5                  Plaintiff,         August 28, 2009

 6          vs.                        10:47 a.m. to 12:35 p.m.

 7    AEY, INC., and EFRAIM
      DIVEROLI,
 8
                    Defendants.        Pages 1 to 66
 9    ------------------------------------------------------------

10

11                        CHANGES OF PLEA
               BEFORE THE HONORABLE JOAN A. LENARD,
12                 UNITED STATES DISTRICT JUDGE

13

14    APPEARANCES:

15

16    FOR THE GOVERNMENT:    ELOISA DELGADO FERNANDEZ, ESQ.
                             ASSISTANT UNITED STATES ATTORNEY
17                           99 Northeast Fourth Street
                             Miami, Florida 33132
18

19    FOR THE DEFENDANT      HY SHAPIRO, ESQ.
           AEY, INC.:        HY SHAPIRO, P.A.
20                           2400 South Dixie Highway
                             Suite 200
21                           Miami, Florida 33133

22    FOR THE DEFENDANT      HOWARD M. SREBNICK, ESQ.
        EFRAIM DIVEROLI:     BLACK, SREBNICK, KORNSPAN &
23                                STUMPF
                             201 South Biscayne Boulevard
24                           Suite 1300
                             Miami, Florida 33131
25
```

```
 1   REPORTED BY:          LISA EDWARDS, CRR, RMR
                           Official Court Reporter
 2                         400 North Miami Avenue
                           Twelfth Floor
 3                         Miami, Florida 33128
                           (305) 523-5499
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Good morning.

 2              You may be seated.

 3              MS. DELGADO FERNANDEZ:  Good morning.

 4              MR. SHAPIRO:  Good morning.

 5              THE COURT:  United States of America versus

 6   AEY, Inc., and Efraim Diveroli, Case No. 08-20574.

 7              Good morning.

 8              Counsel, state your appearances, please, for

 9   the record.

10              MS. DELGADO FERNANDEZ:  Good morning, your

11   Honor.

12              Eloisa Fernandez on behalf of the United

13   States.

14              THE COURT:  Good morning.

15              MR. SREBNICK:  Good morning, Judge.

16              Howard Srebnick on behalf of Efraim Diveroli,

17   who is now standing next to me.

18              Also with me at counsel table is Dr. Steven

19   Strumwasser.

20              THE COURT:  Good morning.

21              MR. SREBNICK:  Good morning, your Honor.

22              Hy Shapiro on behalf of AEY.

23              I'm here with the corporate representative,

24   Marko Cerenko.

25              THE COURT:  Both the Corporate Defendant and
```

```
 1   Mr. Diveroli are set for a change of plea today.
 2   Correct?
 3            MR. SREBNICK:  Yes.  That's correct.
 4            THE COURT:  Let's proceed with the Rule 11
 5   colloquy with Mr. Diveroli.
 6            Place him under oath, please.
 7            (Whereupon, the Defendant was duly sworn.)
 8            THE COURT:  You may be seated.
 9            Do you understand, sir, that you are now under
10   oath and, if you answer any of my questions falsely,
11   your answers may later be used against you in another
12   prosecution for perjury or for making a false
13   statement?
14            THE DEFENDANT:  I do.
15            THE COURT:  What is your full name?
16            THE DEFENDANT:  Efraim Ezra Diveroli.
17            THE COURT:  Have you been known by any other
18   name or names?
19            THE DEFENDANT:  Efraim.
20            THE COURT:  What is your age?
21            THE DEFENDANT:  23 years old.
22            THE COURT:  Could you explain your education.
23   What was the last grade that you completed in school?
24            THE DEFENDANT:  Ninth grade.
25            THE COURT:  Are you currently under the
```

```
 1   influence of any drug or medication or alcoholic

 2   beverage?

 3        MR. SREBNICK:  Your Honor, Mr. Diveroli is

 4   taking certain medications.  Dr. Strumwasser is here so

 5   that we can address those with the Court.  Because of

 6   privacy issues, we'd ask that we do that at side-bar.

 7        THE COURT:  Okay.  Do you waive your client's

 8   appearance side-bar to discuss those issues?

 9        MR. SREBNICK:  That's fine, Judge.

10        THE COURT:  Come on up.

11        (Whereupon, certain proceedings were had at

12   side-bar and have been sealed per order of the Court.)

13                  *  *  *  *  *  *  *  *  *

14        (Whereupon, the following proceedings were had

15   in open court:)

16        THE COURT:  Mr. Diveroli, the ability to

17   understand the charges brought against you:  Has that

18   ability been affected at any time by the use of any

19   drug, medication or alcoholic beverage, including any

20   prescription drugs that you've taken or any other drugs

21   that you may have taken?

22        THE DEFENDANT:  No, your Honor.

23        THE COURT:  The ability to understand the

24   charges that have been brought against you:  Has that

25   ability been affected at any time by the use of any
```

1   drug, medication or alcoholic beverage, including any

2   prescription drugs you may have taken or any other

3   drugs you may have taken?

4        THE DEFENDANT:  No, your Honor.

5        THE COURT:  Have you read a copy of the

6   superseding indictment, which sets forth the written

7   charges made against you in this case?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Do you understand that you have

10   the right to plead not guilty to any offense charged

11   against you and to persist in that plea?

12        THE DEFENDANT:  I do.

13        THE COURT:  Do you understand that you would

14   then have the right to a trial by jury in which you

15   would be assisted by a lawyer in your defense and at

16   which you would have the right to see and hear all of

17   the witnesses who would testify against you and have

18   them cross-examined in your defense?

19        THE DEFENDANT:  Yes.  I understand that, your

20   Honor.

21        THE COURT:  Do you understand that, at a

22   trial, the Government cannot force you to testify

23   unless you voluntarily do so in your own defense?

24        THE DEFENDANT:  I do understand that, your

25   Honor.

1            THE COURT:  Do you understand that, should you

2    decide not to testify at trial or put on any evidence

3    at trial, that these facts cannot be used against you

4    at trial?

5            THE DEFENDANT:  I understand.

6            THE COURT:  Do you understand that you would

7    have the right to have subpoenas issued to witnesses to

8    compel them to attend the trial and testify on your

9    behalf?

10           THE DEFENDANT:  I do understand.

11           THE COURT:  Do you understand that the

12   Government would have to prove beyond a reasonable

13   doubt at trial the essential elements of the offenses

14   charged against you?

15           THE DEFENDANT:  I understand, your Honor.

16           THE COURT:  And do you also understand that

17   all 12 jurors must unanimously agree before a finding

18   of guilty could be made?

19           THE DEFENDANT:  I understand, your Honor.

20           THE COURT:  Do you understand that, if you

21   were convicted at trial, you would have the right to

22   appeal my rulings at trial and your conviction?

23           THE DEFENDANT:  I understand, your Honor.

24           THE COURT:  Do you further understand that, if

25   you enter a plea of guilty and if I accept your plea of

```
 1    guilty, there will be no trial and you will have waived
 2    or given up your right to a trial as well as the
 3    various rights associated with a trial that I've just
 4    described?
 5              THE DEFENDANT:  I completely understand that,
 6    your Honor.
 7              THE COURT:  You are charged by superseding
 8    indictment in Count 1 that, from in or about April,
 9    2007, and continuing through in or about December,
10    2007, the exact dates being unknown to the grand jury,
11    in Miami-Dade County, in the Southern District of
12    Florida and elsewhere, the Defendants, AEY, Inc.,
13    Efraim Diveroli, David Packouz, Alexander Podrizki and
14    Ralph Merrill, did knowingly and willfully combine,
15    conspire, confederate and agree with each other and
16    with other persons known and unknown to the grand jury
17    to commit offenses against the United States, that is,
18    A, in a matter within the jurisdiction of the
19    Department of the Army, an agency of the Executive
20    Branch of the Government of the United States, to
21    knowingly and willfully make materially false,
22    fictitious and fraudulent statements and
23    representations, in violation of Title 18, United
24    States Code, Section 1001(a)(2);
25              B, in a procurement of property as a prime
```

1  contractor with the United States where the value of

2  the contract for such property was a million dollars or

3  more, did knowingly execute a scheme and artifice with

4  the intent, one, to defraud the United States and its

5  agency, the Department of the Army; and, two, to obtain

6  money by means of material false and fraudulent

7  pretenses, representations, and promises, in violation

8  of Title 18, United States Code, Section 1031;

9          And, C, to knowingly and with intent to

10  defraud, devise and intend to devise a scheme and

11  artifice to defraud and to obtain money by means

12  of materially false and fraudulent pretenses,

13  representations and promises, knowing that they were

14  false and fraudulent when made and transmitting and

15  causing to be transmitted certain wire communications

16  in interstate and foreign commerce for the purpose of

17  executing the scheme, in violation of Title 18, United

18  States Code, Section 1343.

19          It was the purpose of the conspiracy for the

20  Defendants, AEY, Inc., Efraim Diveroli, David Packouz,

21  Alexander Podrizki and Ralph Merrill, to unjustly

22  enrich themselves and derive a benefit by concealing

23  and misrepresenting the fact that the ammunition being

24  provided pursuant to the contract was manufactured and

25  originated in China.

1          The manner and means by which the conspiracy

2    was sought to be accomplished included, among others,

3    the following:

4          A:   Defendants Efraim Diveroli, David Packouz

5    and Alexander Podrizki would direct others to assist

6    in the packaging of ammunition to be delivered to

7    Afghanistan.

8          B:   In electronic communications in interstate

9    and foreign commerces and as part of the packaging

10   process, Defendants Efraim Diveroli, David Packouz,

11   Alexander Podrizki and Ralph Merrill would provide

12   instructions and guidance on how to remove Chinese

13   markings from containers so as to conceal the fact that

14   the ammunition was manufactured and originated in

15   China.

16         C:   With each shipment, Defendant Efraim

17   Diveroli, on behalf of AEY, would falsely certify in a

18   certificate of conformance that the ammunition being

19   furnished conformed in all respects with the contract

20   requirements.

21         D:   With each shipment, Defendant Efraim

22   Diveroli, on behalf of AEY, would falsely represent in

23   a certificate of conformance that the manufacturer and

24   point of origin of the ammunition being delivered was

25   the military export and import company hereinafter

1    referred to as MEICO in Tirana, Albania.

2           E:  Upon delivery of each shipment of

3    ammunition, Defendant Efraim Diveroli would submit and

4    cause others to submit to the Department of the Army a

5    copy of the certificate of conformance and an invoice

6    for payment to AEY.

7           F:  With the submission of the certificate of

8    conformance and an invoice, AEY would cause the

9    Department of the Army to pay for the ammunition

10   furnished under the contract and AEY would ultimately

11   receive payment via an electronic transfer of funds.

12          In furtherance of the conspiracy and to

13   achieve the objects thereof, the Defendant or

14   Defendants noted below committed and caused to be

15   committed in the Southern District of Florida and

16   elsewhere at least one of the following overt acts,

17   among others:

18          On or about April 20th, 2007, Alexander

19   Podrizki sent an electronic communication in interstate

20   and foreign commerce to David Packouz which referenced

21   attached pictures of ammunition from containers with

22   Chinese markings;

23          On or about April 20th, 2007, David Packouz

24   sent an electronic communication in interstate and

25   foreign commerce to Alexander Podrizki, stating that

```
 1    they had to get rid of the crates with the Chinese

 2    letterings.  Since Chinese products were prohibited, it

 3    would not be accepted;

 4         On or about April 20th, 2007, Efraim Diveroli

 5    sent an electronic communication in interstate commerce

 6    to the Department of State, asking whether a United

 7    States company could book a transaction involving

 8    ammunition from China to fulfill a United States

 9    Government contract for various types of ammunition

10    destined to Afghanistan;

11         On or about April 23rd, 2007, Alexander

12    Podrizki sent an electronic communication in interstate

13    and foreign commerce to David Packouz referencing a

14    communication Alexander Podrizki had previously sent to

15    a representative of MEICO which indicated that they

16    were awaiting a response from Washington, DC, to see if

17    the Army would accept Chinese-manufactured materials

18    and, "If the response is negative, we will need to have

19    the metal cases painted over";

20         On or about April 23rd, 2007, Efraim Diveroli

21    sent an electronic communication in interstate commerce

22    to the Department of State asking whether a United

23    States company could broker Chinese ammunition that had

24    been in an Albanian company for about 20 years;

25         On or about April 23rd, 2007, Efraim Diveroli
```

1   forwarded an electronic communication in interstate

2   commerce from the Department of State to David Packouz

3   and Ralph Merrill which indicated that the transaction

4   referenced in Paragraph 9 would not be authorized;

5        On the same date, David Packouz forwarded this

6   communication to Alexander Podrizki;

7        On or about April 24th, 2007, Efraim Diveroli

8   sent an electronic communication in interstate commerce

9   to the Department of State, acknowledging the response

10   of April 23rd, 2007, and further questioned whether

11   there was a provision for ammunition that would

12   authorize the transaction similar to a provision that

13   allowed for the United States' importation of firearms

14   which were manufactured in prescribed countries if said

15   firearms had been stored in friendly countries for more

16   than five years and certification documents were

17   provided;

18        On or about April 24th, 2007, Efraim Diveroli

19   sent another electronic communication in interstate

20   commerce to the Department of State, acknowledging its

21   response that no such provision existed as to the

22   questions set forth in Paragraph 11 and further

23   questioned whether there was any way the transaction

24   would be allowable.  Efraim Diveroli included David

25   Packouz and Ralph Merrill on this communication;

1        On or about April 24th, 2007, Efraim Diveroli

2   forwarded an electronic communication in interstate

3   commerce from the Department of State to Ralph Merrill,

4   which indicated that the transaction referenced in

5   Paragraph 11 would only be allowed with a waiver by

6   the President of the United States, based on a

7   recommendation to the President that such waiver was in

8   the national security and foreign policy interests of

9   the United States and there was no way that the

10  proposed transaction could be so justified;

11       On or about April 25th, 2007, Ralph Merrill

12  sent an electronic communication in interstate commerce

13  to Efraim Diveroli and David Packouz, which referenced

14  attached photographs showing methods of "cleaning

15  wooden crates."  Attached to the communication was a

16  photograph showing a person scraping the words "Made in

17  China" off of a wooden crate;

18       On or about May 16th, 2007, Ralph Merrill, on

19  behalf of AEY, sent an electronic communication in

20  interstate and foreign commerce to negotiate a lower

21  price due to shipping costs, the origin of the

22  ammunition and the repackaging;

23       On the same date, Efraim Diveroli and David

24  Packouz were sent copies of this electronic

25  communication;

1          On or about May 23rd, 2007, Efraim Diveroli

2    traveled to Tirana, Albania;

3          On or about May 26th, 2007, Efraim Diveroli

4    sent an electronic communication in interstate and

5    foreign commerce to David Packouz and Ralph Merrill to

6    confirm that a lower price for the ammunition had been

7    negotiated;

8          On or about June 28th, 2007, in a certificate

9    of conformance, Efraim Diveroli, on behalf of AEY,

10   falsely certified that the ammunition being furnished

11   conformed in all respects with the contract

12   requirements and falsely represented that the

13   manufacturer and point of origin of the ammunition

14   was MEICO in Tirana, Albania;

15         On or about October 31st, 2007, in a

16   certificate of conformance, Efraim Diveroli, on behalf

17   of AEY, falsely certified that the ammunition being

18   supplied conformed with all aspects of the contract and

19   falsely represented that the manufacturer and point of

20   origin of the ammunition was MEICO in Tirana, Albania,

21   all in violation of Title 18, United States Code,

22   Section 371.

23         Would counsel for the Government make a

24   representation concerning the facts the Government is

25   prepared to prove at trial, please.

1          MS. DELGADO FERNANDEZ:  Certainly, your Honor.

2          With respect to the Government's evidence, if

3  we were to proceed to trial against Mr. Diveroli, the

4  United States would prove beyond a reasonable doubt

5  that AEY, Inc., was incorporated in the state of

6  Florida with its principal place of business in Miami

7  Beach.

8          In 2006 and 2007, AEY was engaged in the

9  business of procuring arms and ammunition.

10          During this time period, Efraim Diveroli was

11  the president and owner of AEY and managed and directed

12  the business operations of AEY.

13          David Packouz was a director and vice

14  president of AEY.

15          Alexander Podrizki was an agent of AEY,

16  stationed in Tirana, Albania.

17          Ralph Merrill was an agent of AEY and a

18  business associate of Mr. Diveroli who provided

19  financial and managerial assistance to AEY.

20          On January 26th, 2007, the United States Army

21  Sustainment Command, a component of the United States

22  Department of the Army, a subcomponent of the United

23  States Department of Defense, awarded a prime contract,

24  designated as W52P1J-07-D0004, hereinafter referred to

25  as "the contract" in this matter, to AEY to provide

 1   various types of ammunition, including, among other

 2   types, 7.62 by 54 and 7.62 by 39 rounds to the Islamic

 3   Republic of Afghanistan.  The contract was valued at

 4   $298 million.

 5          Among other things, the contract contained a

 6   prohibition on the acquisition of United States

 7   Munitions List items from Communist Chinese military

 8   companies, which prohibited AEY from delivering items

 9   acquired directly or indirectly from Communist Chinese

10   military companies.

11          AEY entered into a subcontract with a foreign

12   company to procure the rounds of ammunition, all items

13   at the time listed on the US Munitions List, to fulfill

14   that portion of this contract.

15          AEY's subcontractor obtained these rounds from

16   Albania's military export and import company, MEICO.

17   The ammunition that was provided by MEICO was, in fact,

18   manufactured by the People's Republic of China between

19   the years of approximately 1958 and 1974.

20          The ammunition was to be sent -- being sent

21   directly from Albania to Afghanistan on flights that

22   were arranged by AEY and its agents.

23          In order to save money on shipping costs,

24   representatives of AEY decided to remove the heavy

25   wooden crates in which the tins of ammunition were

1   packaged.

2         In April, 2007, Mr. Diveroli sent Mr. Podrizki

3   to Albania as AEY's agent to oversee the removal of the

4   wooden crates and the loading of the ammunition onto

5   the cargo planes.

6         In this process, Mr. Podrizki discovered that

7   the ammunition being supplied by MEICO was manufactured

8   in the PRC.

9         As described in Overt Act 5 of the superseding

10  indictment, Mr. Podrizki took photographs of the

11  ammunition containers with the Chinese markings and

12  sent them via e-mail in interstate and foreign commerce

13  to Mr. Packouz.  Mr. Packouz showed the photographs to

14  Mr. Diveroli.

15        Mr. Diveroli, Packouz, Podrizki and Merrill

16  understood at the time that providing ammunition

17  manufactured in the People's Republic of China would

18  violate the contract's prohibition on delivering items

19  acquired indirectly from Communist Chinese military

20  companies.

21        Accordingly, Diveroli, Packouz, Podrizki and

22  Merrill discussed with each other and with others at

23  AEY ways to avoid this prohibition.

24        One proposed solution was to see whether the

25  United States Department of State would allow AEY to

1    supply the ammunition manufactured in the PRC.

2          As alleged in Overt Acts 7, 9, 10, 11, 12 and

3    13 of the superseding indictment, Diveroli corresponded

4    with the State Department on this issue via e-mails

5    sent in interstate commerce between the time period of

6    April 20th through April 24th, 2007.

7          In response, the State Department informed

8    Mr. Diveroli that AEY would not be allowed to supply

9    ammunition manufactured in the PRC.  Diveroli, Packouz,

10   Podrizki and Merrill shared these e-mails with each

11   other.

12         Diveroli, Packouz, Podrizki and Merrill also

13   discussed with each other and with others at AEY ways

14   to conceal the fact that the ammunition was

15   manufactured in the PRC.

16         As described in Overt Act 8, Mr. Podrizki sent

17   an e-mail in interstate and foreign commerce to

18   Mr. Packouz, suggesting that the metal cases would

19   have to be painted over.

20         Also, as described in Overt Act 14,

21   Mr. Merrill sent an e-mail in interstate commerce to

22   Mr. Diveroli and Mr. Packouz, suggesting that the

23   Chinese markings could be scraped off the crates.

24         Mr. Diveroli, Packouz, Podrizki and Merrill

25   and others at AEY ultimately chose to conceal the

1   ammunition's Communist Chinese origin by having the

2   ammunition removed from the wooden crates and metal

3   tins that bore the Chinese markings, disposing of

4   papers containing Chinese markings and repacking the

5   ammunition in cardboard boxes.

6          Having devised a method to conceal that the

7   ammunition was manufactured in the PRC, representatives

8   of AEY decided to use this issue as leverage to secure

9   a lower price for the ammunition from its subcontractor

10  and MEICO.

11         As referenced in Overt Act 15, on May 16th,

12  2007, Mr. Merrill, on behalf of AEY, sent an e-mail

13  in interstate and foreign commerce to AEY's

14  subcontractors to negotiate a lower price due to

15  shipping costs, the origin of the ammunition and the

16  repackaging.

17         As referenced in Overt Act 16, on May 23rd,

18  2007, Mr. Diveroli traveled to Albania.  There,

19  Mr. Diveroli and Mr. Podrizki met with representatives

20  of MEICO and negotiated a new price for the ammunition.

21         As referenced in Overt Act 17, on May 26th,

22  2007, Mr. Diveroli sent an e-mail in interstate and

23  foreign commerce to Mr. Packouz and Mr. Merrill,

24  confirming that, in fact, a lower price for the

25  ammunition had been negotiated.

1          Beginning at least as early as June 21st,

2     2007, and continuing through at least as early as

3     October 31st, 2007, AEY delivered, in fulfillment of

4     the contract, approximately 35 shipments containing a

5     total of 90 million rounds of ammunition that it had

6     acquired indirectly from Communist Chinese military

7     companies through MEICO.

8          All of these rounds of ammunition had been

9     manufactured in the PRC and repackaged according to the

10    scheme described above and in the superseding

11    indictment.

12         In documents accompanying each of these

13    shipments, Mr. Diveroli, on behalf of AEY, falsely

14    certified that the ammunition being furnished conformed

15    in all respects with the contract requirements and that

16    the manufacturer and point of origin of the ammunition

17    was MEICO in Tirana, Albania.

18         In return for these shipments, AEY submitted

19    invoices that caused the Department of the Army to make

20    payments to AEY totalling approximately $10,331,736.44.

21    These payments were made via electronic transfers of

22    funds into bank accounts of AEY.

23         On August 23rd, 2007, agents executed a search

24    warrant at AEY's place of business in Miami Beach,

25    Florida.  Within two weeks of the search, Mr. Packouz

```
1    and Mr. Podrizki contacted federal authorities and were

2    debriefed about this contract.

3            Both Mr. Packouz and Mr. Podrizki revealed

4    that AEY had been supplying Chinese ammunition under

5    the contract.  At the time that they came forward, AEY

6    had delivered approximately 6.5 million dollars' worth

7    of Chinese ammunition.

8            On March 25th, 2008, the Army temporarily

9    suspended AEY and Mr. Diveroli from future contracting

10   with any agency in the Executive Branch of the United

11   States Government.

12           On May 23rd, 2008, the Army advised

13   Mr. Diveroli that it was terminating the contract

14   with AEY due to the delivery of ammunition that was

15   manufactured in the PRC.  The Army sustained costs in

16   excess of $40,000 to reissue and reprocure the items

17   under the contract.

18           By providing ammunition that was manufactured

19   in the PRC instead of Albania, AEY derived in excess

20   of -- profits of approximately $360,000.

21           THE COURT:  Do you understand the charge

22   against you, sir?

23           THE DEFENDANT:  I do, your Honor.

24           THE COURT:  Do you admit or not admit the

25   facts as stated by the prosecutor?
```

 1              THE DEFENDANT:  I admit those facts.

 2              THE COURT:  And is this your signature on the

 3       factual proffer?

 4              THE DEFENDANT:  Yes, it is, your Honor.

 5              THE COURT:  Do you have any deletions or

 6       corrections?

 7              THE DEFENDANT:  I do not, your Honor.

 8              THE COURT:  How do you wish to plead to

 9       Count 1 of the superseding indictment?  Guilty or not

10       guilty?

11              THE DEFENDANT:  Guilty.

12              THE COURT:  Are you pleading guilty because

13       you are guilty?

14              THE DEFENDANT:  Yes, I am.

15              THE COURT:  Do you understand that the maximum

16       possible penalty of confinement provided by law for the

17       offense to which you plead guilty is five years'

18       imprisonment?

19              THE DEFENDANT:  I understand, your Honor.

20              THE COURT:  In addition, following a term of

21       imprisonment exceeding one year, the Court must impose

22       a term of supervised release.  Such term of supervised

23       release shall commence upon release from imprisonment.

24              The maximum amount of time in supervised

25       release in this matter is three years.

```
 1              Do you understand that as well?
 2              THE DEFENDANT:  I do understand, your Honor.
 3              THE COURT:  Do you understand that, if you
 4    violate the conditions of supervised release, you can
 5    be given additional time in prison?
 6              THE DEFENDANT:  I do understand, your Honor.
 7              THE COURT:  The maximum fine that may be
 8    imposed against you in this offense is up to $250,000
 9    or twice the amount of gross loss or gross gain
10    involved in the offense.
11              The Court may sentence you to serve a sentence
12    of confinement and, also, assess a fine against you.
13              Do you understand that as well?
14              THE DEFENDANT:  I do, your Honor.
15              THE COURT:  In addition to the penalties of
16    confinement and fines, you may be ordered to make
17    restitution and you will be required to pay a special
18    assessment of $100.
19              Do you understand that as well?
20              THE DEFENDANT:  Yes, I do.
21              THE COURT:  Do you understand that the offense
22    to which you plead guilty is a felony offense?
23              THE DEFENDANT:  I do, your Honor.
24              THE COURT:  Do you understand that, if your
25    plea of guilty is accepted, you will be adjudicated
```

```
 1   guilty of that offense?

 2              THE DEFENDANT:  I understand, your Honor.

 3              THE COURT:  Do you understand that such

 4   adjudication may deprive you of valuable civil rights,

 5   such as the right to vote, the right to hold public

 6   office, the right to serve on a jury and the right to

 7   possess a firearm?

 8              THE DEFENDANT:  I do, your Honor.

 9              THE COURT:  Are you a citizen of the United

10   States, sir?

11              THE DEFENDANT:  I am.

12              THE COURT:  Do you understand that, if you are

13   a naturalized citizen and this offense was committed

14   before or during the pendency of your citizenship

15   application, that such adjudication may result in the

16   loss of your status as a United States citizen?

17              THE DEFENDANT:  I understand.

18              THE COURT:  Do you understand that the

19   provisions of the sentencing guidelines promulgated by

20   the United States Sentencing Commission will advise the

21   Court in this matter?

22              THE DEFENDANT:  I do understand that.

23              THE COURT:  Have you and your attorney talked

24   about how the sentencing guidelines might apply to your

25   case?
```

1          THE DEFENDANT:  Yes.  We have discussed that

2     at length.

3          THE COURT:  Do you understand that the Court

4     will not be able to determine the advisory guideline

5     range for your sentence until after the advisory

6     presentence investigation report has been completed and

7     you and the Government have had the opportunity to

8     challenge the reported facts and the application of the

9     guidelines as recommended by the probation officer?

10          THE DEFENDANT:  That is correct, your Honor.

11          THE COURT:  Do you understand that the Court

12     will consider all of the sentencing factors provided by

13     law, including the sentencing guidelines?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that, after

16     considering all of these factors, the Court will impose

17     a sentence it finds appropriate up to the statutory

18     maximum?

19          THE DEFENDANT:  I do understand that, your

20     Honor.

21          THE COURT:  Do you understand that the

22     sentence imposed may be different from any estimate

23     your attorney may have given you?

24          THE DEFENDANT:  I understand that.

25          THE COURT:  Do you understand that parole has

```
 1  been abolished and that, if you are sentenced to
 2  prison, you will not be released on parole?
 3          THE DEFENDANT:  I understand.
 4          THE COURT:  Do you understand that, under some
 5  circumstances, you or the Government may have the right
 6  to appeal any sentence that I impose?
 7          THE DEFENDANT:  Excuse me.  Do -- would have
 8  the right or --
 9          THE COURT:  Let me ask the question again.  I
10  want to make sure you understand it.
11          THE DEFENDANT:  Thank you.
12          THE COURT:  Do you understand that, under some
13  circumstances, you or the Government may have the right
14  to appeal any sentence that I impose?
15          THE DEFENDANT:  I understand, your Honor.
16          THE COURT:  Is your plea of guilty being made
17  freely and voluntarily?
18          THE DEFENDANT:  Absolutely, your Honor.
19          THE COURT:  Has anyone forced or threatened
20  you or coerced you to plead guilty?
21          THE DEFENDANT:  They have not.
22          THE COURT:  Other than the representations
23  made to you in the plea agreement, which we're going to
24  review in a moment, and the matters that we discussed
25  side-bar, has anyone made any other representations to
```

1    you to convince you to plead guilty?

2              THE DEFENDANT:  No, ma'am.

3              THE COURT:  Are you satisfied with your

4    attorney?

5              THE DEFENDANT:  Very much so.

6              THE COURT:  Have you had adequate time to

7    fully confer with your attorney and he with you about

8    this charge, these proceedings and all matters relating

9    to this charge?

10             THE DEFENDANT:  Yes, I have, your Honor.

11             THE COURT:  Turning now to the plea agreement,

12   you agree to plead guilty to Count 1 of the superseding

13   indictment, which charges you with conspiring to make

14   false statements in violation of Title 18, United

15   States Code, Section 1001(a)(2); conspiring to commit

16   major fraud against the United States in violation of

17   Title 18, United States Code, Section 1031; and

18   conspiring to commit wire fraud in violation of

19   Title 18, United States Code, Section 1343, all in

20   violation of Title 18, United States Code, Section 371.

21             The Government agrees to seek dismissal of

22   Counts 2 through 72 and 74 through 85 and the

23   forfeiture allegations of the superseding indictment

24   as to you after sentencing.

25             You are aware that sentence will be imposed by

```
 1   the Court after considering the sentencing guidelines.
 2           You acknowledge and understand that the Court
 3   will compute an advisory sentence under the guidelines
 4   and that the applicable guidelines will be determined
 5   by the Court relying, in part, on the results of a
 6   presentence investigation by the probation office and
 7   that this investigation will begin after your guilty
 8   plea has been entered.
 9           You are also aware that, under certain
10   circumstances, the Court may depart from the advisory
11   guideline range it has computed and may raise or lower
12   that advisory sentence under the guidelines.
13           You are further aware and understand that the
14   Court is required to consider the advisory guideline
15   range determined under the guidelines, but is not bound
16   to impose that sentence.
17           The Court is permitted to tailor the ultimate
18   sentence in light of other statutory concerns, and such
19   sentence may be either more severe or less severe than
20   the guidelines' advisory sentence.
21           Knowing these facts, you understand and
22   acknowledge that the Court has the authority to impose
23   any sentence within and up to the statutory maximum
24   authorized by law for the offense to which you plead
25   guilty and you may not withdraw your plea solely as a
```

1   result of the sentence imposed.

2          You understand and acknowledge that the Court

3   may impose a statutory maximum term of imprisonment of

4   up to five years as to Count 1, followed by a term of

5   supervised release of up to three years.

6          In addition, the Court may impose a fine of up

7   to $250,000 or twice the amount of gross loss or gross

8   gain involved in Count 1, may order restitution, and a

9   special assessment in the amount of $100 will be

10  imposed on you.

11         You agree that any special assessment imposed

12  shall be paid at the time of sentencing.

13         The Government reserves the right to inform

14  the Court and the probation office of all facts

15  pertinent to the sentencing process, including all

16  relevant information concerning the offenses committed,

17  whether charged or not, as well as concerning you and

18  your background.

19         Subject only to the express terms of any

20  agreed-upon sentencing recommendations contained in

21  this agreement, the Government further reserves the

22  right to make any recommendation as to the quality and

23  quantity of punishment.

24         You and the Government agree that, although

25  not binding on the probation office or the Court, you

```
 1   will jointly recommend that the Court impose a sentence

 2   within the advisory guideline range produced by

 3   application of the guidelines and that the Court

 4   neither vary upward nor vary downward from that range.

 5          Although not binding on the probation office

 6   or the Court, you and the Government further agree

 7   that, except as otherwise expressly contemplated in

 8   this plea agreement, you will jointly recommend that

 9   the Court neither depart upward nor depart downward

10   under the guidelines when determining the advisory

11   guideline range in this case.

12          However, if the Court does not accept the

13   joint sentencing recommendations set forth in

14   Paragraph 10, then you and the Government shall be

15   released from your agreements that I just set forth.

16          The Government agrees it will recommend at

17   sentencing that the Court reduce by two or three levels

18   the sentencing guideline level applicable to your

19   offense under Section 3E1.1 of the guidelines, based

20   upon your recognition and affirmative and timely

21   acceptance of personal responsibility.

22          However, the Government will not be required

23   to make this sentencing recommendation if you fail or

24   refuse to make a full, accurate and complete disclosure

25   of the circumstances surrounding the relevant offense
```

1    conduct to the probation office and the Government, if

2    it is found that you have misrepresented facts to the

3    Government prior to entering this plea agreement or if

4    you commit any misconduct after entering into this plea

5    agreement, including, but not limited to, committing a

6    state or federal offense, violating any term of release

7    or making false statements or misrepresentations to any

8    governmental entity or official.

9         The Government agrees not to seek additional

10   criminal prosecutions against you for violations of law

11   associated with your performance of the United States

12   Department of Defense contract number designated

13   W52P1J-07-D0004.

14        This agreement does not provide or promise any

15   waiver of any civil or administrative actions,

16   sanctions or penalties that may apply, including, but

17   not limited to, fines, penalties, claims for damages,

18   suspension, debarment, listing, licensing, injunctive

19   relief or remedial action.

20        You and the Government agree that, although

21   not binding on the probation office or the Court,

22   you will jointly recommend that the Court make the

23   following findings and conclusions as to the sentence

24   to be imposed:

25        That under Section 2B1.1(a) of the guidelines,

1   the base offense level resulting from your offense

2   conduct is 6.

3        That under 2B1.1(b)(1) of the guidelines, the

4   relevant amount of loss resulting from the offense

5   committed in this case is more than $400,000 and less

6   than $1,000,001 resulting in an increase of 14 levels.

7        That pursuant to Section 2B1.1(b)(9) of the

8   guidelines, a substantial part of the fraudulent scheme

9   was committed from outside the United States, resulting

10  in an increase of two levels.

11       That pursuant to 3B1.1(a), you should receive

12  an increase of four levels as an organizer and leader

13  of criminal activity that involved five or more

14  participants or was otherwise extensive.

15       That you shall pay a criminal fine in the

16  amount of $250,000, made payable to the United States

17  District Court, to be paid at time of sentencing.

18       You are aware that Title 18, United States

19  Code, Section 3742, affords you the right to appeal the

20  sentence imposed in this case.

21       You are also aware that Title 18, United

22  States Code, Section 2255, affords you the right to

23  collaterally attack the conviction or sentence imposed

24  in this case.

25       Acknowledging this, in exchange for the

1  undertakings made by the United States in this plea

2  agreement, you waive all rights conferred by

3  Section 3742 to appeal any sentence imposed, including

4  any restitution order, or to appeal the manner in which

5  sentence was imposed, unless the sentence exceeds the

6  maximum permitted by statute or as a result of an

7  upward departure or upward variance from the guideline

8  range the Court establishes at sentencing, and you

9  also waive all rights conferred by Section 2255 to

10  collaterally attack the conviction, any sentence

11  imposed, including any restitution order, or the manner

12  in which sentence was imposed, unless the sentence

13  exceeds the maximum permitted by statute or as a result

14  of an upward departure or upward variance from the

15  guideline range the Court establishes at sentencing.

16        You further understand that nothing in this

17  agreement shall affect the Government's right and/or

18  duty to appeal as set forth in Title 18, United States

19  Code, Section 3742(b).

20        However, if the Government appeals your

21  sentence under Section 3742(b), you shall be released

22  from your waiver of appellate rights.

23        By signing this agreement, you acknowledge

24  that you have discussed the appeal and collateral

25  attack waiver set forth in this agreement with your

1    attorney.

2         You further agree, together with the

3    Government, to request that the Court enter a specific

4    finding that your waiver of your right to appeal the

5    sentence to be imposed in this case and to collaterally

6    attack the conviction or sentence to be imposed in this

7    case was knowing and voluntary.

8         You are aware that sentence has not yet been

9    determined by the Court.  You are also aware that any

10   estimate of the probable sentencing range or sentence

11   that you may receive, whether that estimate comes from

12   your attorney, the Government or the probation office,

13   it is a prediction, not a promise, and is not binding

14   on the Government, the probation office or the Court.

15        You understand further that any recommendation

16   that the Government makes to the Court as to

17   sentencing, whether under this agreement or otherwise,

18   it is not binding on the Court and the Court may

19   disregard the recommendation in its entirety.

20        You understand and acknowledge that you may

21   not withdraw your plea based upon the Court's decision

22   not to accept a sentencing recommendation made by you,

23   the Government or a joint recommendation made by both

24   you and the Government.

25        This is the entire agreement and understanding

```
 1    between you and the United States.

 2              There are no other agreements, promises,

 3    representations or understandings, unless contained in

 4    a letter from the United States Attorney's Office

 5    executed by all parties and counsel prior to the change

 6    of plea.

 7              Is this your signature on the agreement,

 8    Mr. Diveroli?

 9              THE DEFENDANT:  Yes, it is, your Honor.

10              THE COURT:  Did you read the agreement before

11    you signed it?

12              THE DEFENDANT:  Thoroughly.

13              THE COURT:  Did you discuss fully the

14    agreement with your attorney before you signed it?

15              THE DEFENDANT:  I have.

16              THE COURT:  Did you understand all the terms

17    of the agreement before you signed it?

18              THE DEFENDANT:  Yes, I have.

19              THE COURT:  Do you understand that, in

20    Paragraph 11 on Pages 5 and 6, that you are giving up

21    your right to appeal your sentence and your right to

22    collaterally attack your conviction and/or your

23    sentence?

24              THE DEFENDANT:  I do understand that I'm

25    waiving that right.
```

1          THE COURT:  Have you fully discussed this

2     appeal waiver and collateral attack waiver with your

3     attorney?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  And are you entering into a waiver

6     of your appellate rights and your collateral attack

7     rights freely and voluntarily?

8          THE DEFENDANT:  Yes, ma'am -- yes, your Honor.

9          THE COURT:  The terms that I summarized to

10    you:  Are those the terms of your plea agreement with

11    the Government, as you understand them?

12         THE DEFENDANT:  Yes, they are.

13         THE COURT:  Has anyone made any other or

14    different promises or assurances to you in an effort to

15    induce you to enter into this plea agreement and enter

16    a plea of guilty in this case?

17         THE DEFENDANT:  No, they have not.

18         THE COURT:  Has anyone threatened you or tried

19    in any other way to force you to enter into this plea

20    agreement and enter a plea of guilty in this case?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Do you understand that, if I

23    accept your plea of guilty and the sentence that I give

24    you is more severe than you expected, you will still be

25    bound by your plea agreement, still be bound by your

```
 1   plea of guilty and you will have no right to withdraw

 2   them?

 3            THE DEFENDANT:  I understand, your Honor.

 4            THE COURT:  Mr. Srebnick, is this your

 5   signature on the plea agreement?

 6            MR. SREBNICK:  Yes, Judge.

 7            THE COURT:  And, Ms. Fernandez, your signature

 8   on the agreement as well?

 9            MS. DELGADO FERNANDEZ:  Yes, your Honor.

10            THE COURT:  Mr. Srebnick, are you satisfied

11   that pleading guilty to the charge is in the best

12   interest of your client, considering all the

13   circumstances in the case?

14            MR. SREBNICK:  Yes, Judge.

15            THE COURT:  And do you feel that there would

16   be sufficient evidence upon which to convict the

17   Defendant of this charge?

18            MR. SREBNICK:  Yes, Judge.

19            THE COURT:  Mr. Diveroli, do you have any

20   questions, sir, about the possible consequences of your

21   plea of guilty?

22            THE DEFENDANT:  Not at this time, your Honor.

23            THE COURT:  Do you understand fully all of the

24   possible consequences of your plea of guilty?

25            THE DEFENDANT:  Yes, I do, your Honor.
```

1           THE COURT:  It is the finding of the Court in

2   the case of United States of America versus Efraim

3   Diveroli that the Defendant has entered into a waiver

4   of his appellate rights and his collateral attack

5   rights knowingly, freely and voluntarily after full

6   consultation with his attorney and without coercion or

7   duress.

8           It is further the finding of the Court in the

9   case of United States of America versus Efraim Diveroli

10  that the Defendant is fully competent and capable of

11  entering an informed plea, that the Defendant is aware

12  of the nature of the charge and the consequences of the

13  plea, and that the plea of guilty is a knowing and

14  voluntary plea supported by an independent basis in

15  fact containing each of the essential elements of the

16  offense.

17          The plea is, therefore, accepted and the

18  Defendant is now adjudicated guilty of Count 1 of the

19  superseding indictment.

20          A written advisory presentence investigation

21  report will now be prepared by the probation office to

22  assist the Court in sentencing.  You will be asked,

23  sir, to give information for the report, and your

24  attorney may be present if you wish.

25          The Court shall permit the Defendant and

1  counsel to read the advisory presentence investigation

2  report, file any objections to the report before the

3  sentencing hearing.

4        The Defendant and his counsel shall be

5  afforded the opportunity to speak on behalf of the

6  Defendant at the sentencing hearing.

7        At this time I'm going to refer the Defendant

8  to the probation office for an advisory presentence

9  investigation report.

10        We turn now to the conditions of release.

11        What's the Government's position?  What are

12  his terms of release, first of all?

13        MS. DELGADO FERNANDEZ:  Your Honor, he is on a

14  corporate sure -- 100,000 corporate surety bond and a

15  1-million-dollar and 10 percent bond.

16        He is required to be reporting to probation,

17  Code-a-Phone calls, and I think he's now doing that

18  almost daily.

19        Our position with respect to the most current

20  incident, the August 10th arrest, is that we would ask

21  the Court to consider modifying his conditions of bond

22  where he not be allowed to drive for his own safety, as

23  well as the safety of others, pending the final outcome

24  of some of the tests that are -- that we still have yet

25  to receive those results at this time.

    1              So we would ask to modify his conditions to

    2      restrict his driving.

    3              He is currently under both substance abuse

    4      therapy and --

    5              THE COURT:  Are those conditions of his bond?

    6              MS. DELGADO FERNANDEZ:  Yes, they are.

    7              And he is providing urine tests, as directed

    8      by probation.

    9              THE COURT:  Mr. Srebnick?

   10              MR. SREBNICK:  Yes, Judge.

   11              In addition, Mr. Diveroli has been diligently

   12      meeting with Dr. Strumwasser on a regular basis to

   13      address the medical issues that we raised at side-bar.

   14              As I indicated at side-bar, despite the stop

   15      for DUI, he produced a Breathalyzer of 000, which means

   16      he was not under the influence of alcohol.

   17              He also volunteered a urine sample, and I

   18      understand we addressed that issue at side-bar.

   19              And certainly we have no objection to limiting

   20      Mr. Diveroli's driving at this time.  When I say limit,

   21      meaning eliminating his driving at this time, pending

   22      any further test results that might shed more light on

   23      that issue.

   24              It is my understanding, though, that the -- if

   25      I could just consult with Dr. Strumwasser.

1           Dr. Strumwasser, during the plea colloquy, did

2    phone his office to confirm that the drug that you

3    identified and spelled for us, in fact, is Adderall,

4    which is the medication that is prescribed to

5    Mr. Diveroli.

6           So it appears there was some issue with the

7    combination of medications which impaired his ability

8    to drive.

9           In any event, at this time, if the Government

10   is requesting that he not drive pending any further

11   results of the testing, that would accommodate us as

12   well.  And then we can report back any further news to

13   the Court when we hear back.

14          THE COURT:  Give me one moment, please.

15          I agree with both counsel for the Government

16   and for the Defendant that he be permitted to remain

17   out on bond at this time with the conditions that were

18   previously set with the modification that, until the

19   DUI arrest is resolved -- and I think there's going to

20   have to be some determination as to whether or not he's

21   capable of driving based upon these medications that

22   he's taking -- that he not be allowed to drive.

23          So that will be a condition of his bond.

24          Mr. Diveroli, I want to warn you, sir, that

25   failure to appear as required is a criminal offense for

1   which you could be sentenced to imprisonment, that the

2   bond conditions previously won by you continue to apply

3   with the modification that I just made that you are not

4   going to be allowed to drive or you may not drive as a

5   condition of your bond, and that the penalties for

6   violating those conditions can be severe.

7         Do you understand that?

8         THE DEFENDANT:  I do.

9         THE COURT:  Okay.

10        MR. SREBNICK:  I think the only thing left is

11  to select a date for sentencing.

12        THE COURT:  Yes.

13        MR. SREBNICK:  I have a trial, to the extent

14  that it matters, in Broward County.  It's probably

15  going to take three or four weeks starting October 19.

16  So I expect to be tied up during much of the month

17  of -- end of October, early November.

18        THE COURT:  Okay.  I just sent Patricia on a

19  mission.  So I'll have her come back and look at -- so

20  that starts October 19th.

21        When is the 70-day period here?

22        THE COURTROOM DEPUTY:  November 10th.

23        THE COURT:  Is that our date?

24        THE COURTROOM DEPUTY:  That's the date.

25  November 10th at 2:00 p.m.

```
 1              THE COURT:  November 10th at 2:00 p.m.

 2              Will you be finished then?

 3              MR. SREBNICK:  I don't know.  But if I'm not,

 4     I'll let you know well in advance.

 5              THE COURT:  Okay.  That's fine.

 6              You obviously can't be in two places at once.

 7     So November 10th at 2:00.

 8              What we're going to do is recess this matter

 9     for just a few moments.

10              I have just a status conference regarding a

11     trial date on another case.  Then we'll take up the AEY

12     colloquy.

13              So we're in recess in this matter for, I'd

14     say, 15 minutes.

15              (Thereupon a recess was taken, after which the

16     following proceedings were had:)

17              THE COURT:  United States of America versus

18     AEY, Inc., Case No. 08-20574.

19              Good afternoon now.

20              Counsel, state your appearances, please, for

21     the record.

22              MS. DELGADO FERNANDEZ:  Good afternoon, your

23     Honor.

24              Eloisa Fernandez on behalf of the United

25     States.
```

1          MR. SHAPIRO:  Good afternoon, your Honor.

2          Hy Shapiro on behalf of AEY.

3          I am accompanied by Mr. Marko Cerenko on

4    behalf of AEY.

5          THE COURT:  Good afternoon.

6          You can be seated.

7          And, yes, Mr. Shapiro.  You wanted to lighten

8    my load.

9          MR. SREBNICK:  Yes.  I was hoping, your Honor,

10   that perhaps -- Mr. Cerenko and myself both sat through

11   the previous plea colloquy.

12         And given that the -- Defendant AEY is charged

13   in the same superseding indictment as Mr. Diveroli, we

14   would be prepared to stipulate to avoid the Court from

15   having to read --

16         THE COURT:  That's fine.  I can tailor the

17   colloquy that way.

18         MR. SHAPIRO:  I know as to the plea

19   agreement -- I believe Ms. Fernandez has circled those

20   paragraphs that would differ from the previous plea

21   agreement that she read into the record -- or factual

22   proffer.  Sorry.

23         MS. DELGADO FERNANDEZ:  Your Honor, for the

24   record, the factual proffer for this Defendant would be

25   the same that was put in the record for Mr. Diveroli.

 1              THE COURT:  Okay.  And Mr. Diveroli is no

 2    longer here?  Did they leave?

 3              MR. SHAPIRO:  They're here, your Honor.

 4              THE COURT:  I think I may have to go

 5    through -- since he signed the factual proffer --

 6              MR. SHAPIRO:  Your Honor, Mr. Cerenko could

 7    sign it.  If I might approach, I could take the one

 8    that's been signed and have Mr. Cerenko also sign it so

 9    that you may proceed.

10              THE COURT:  Okay.  Let me give you the plea

11    agreement.  I'm just looking at the corporate

12    resolution.

13              MR. SHAPIRO:  Your Honor, Mr. Cerenko has

14    signed the plea agreement and dated it with today's

15    date.

16              THE COURT:  I'm still going to need

17    Mr. Diveroli regarding the resolution.  Because

18    Mr. Cerenko is not a corporate officer.  Correct?

19    He's just been appointed special director?

20              MR. CERENKO:  Correct.

21              MR. SHAPIRO:  They're coming, your Honor.

22              THE COURT:  Let me ask you and the Government

23    a question as they're coming in.

24              Where does this authority for the special

25    director to be a representative of the corporation come

1   from?

2          I mean, I see it in the resolution.  But is

3   that provided by law or provided for in the bylaws of

4   the corporation?

5          This is the first time I've ever seen --

6   normally, it's a -- a corporate representative is an

7   officer or director of the corporation who proceeds

8   with the colloquy.

9          Are you an officer or director, Mr. Cerenko?

10          MR. CERENKO:  No, I'm not, your Honor.

11          THE COURT:  So this is the first time that

12   I've ever seen someone just appointed as a special

13   director.

14          So I wanted to find out what the authorization

15   for that is, other than you guys came up with it.

16          (Discussion had off the record amongst

17   counsel.)

18          MR. SHAPIRO:  Your Honor, it's solely by

19   appointment by Efraim Diveroli, who is the sole

20   shareholder.

21          MS. DELGADO FERNANDEZ:  Your Honor, I thought

22   Mr. Cerenko was an employee, but I'm being told he's

23   actually an independent contractor of AEY.

24          The intent of this was done primarily so that,

25   if Mr. Diveroli was remanded and was not available to

1   come in or take the plea, there would always be a

2   second officer or agent of the corporation.

3           But he's here --

4           THE COURT:  Well, let me just explain to

5   Mr. Srebnick what's going on, since he just came in

6   the courtroom with his client.

7           Would you just state your appearances, please,

8   Mr. Srebnick.

9           MR. SREBNICK:  Yes.

10          Howard Srebnick appearing on behalf of Efraim

11  Diveroli, who is also in court.

12          THE COURT:  I had originally requested that

13  Mr. Diveroli be here concerning the corporate

14  resolution, since he signed it, for purposes of the

15  plea by the corporation.

16          MR. SREBNICK:  Yes.

17          THE COURT:  But now we've gone on and I

18  questioned what authority there was for the special

19  director, who is not an officer or director or employee

20  of the corporation, to be the person going through the

21  Rule 11 colloquy for the corporation and asked what

22  authority by law or in the bylaws of the corporation or

23  where this came from, other than you all came up with

24  it.  Nobody's been able to answer that so far.

25          MR. SREBNICK:  Do you want my candid answer?

```
 1              THE COURT:  Sure.

 2              MR. SREBNICK:  My candid answer is you don't

 3    need a special person appointed.  I think Mr. Diveroli

 4    has already accepted the plea.  He is the

 5    owner/president of the corporation and --

 6              THE COURT:  Well, what I'm going to do -- let

 7    me do this:  I'm just -- I will feel more comfortable,

 8    since he's here -- he is the sole officer, shareholder

 9    and director of the corporation.  Correct?

10              MR. SREBNICK:  Yes.

11              THE COURT:  Okay.  He can certainly appoint

12    Mr. Cerenko to fulfill any obligations of the

13    corporation -- I don't think there's any objection by

14    the Government -- if there are any obligations

15    post-plea, whatever they may be.

16              But let me just ask him, Mr. Diveroli, some

17    additional questions in his capacity as the officer and

18    director of the corporation.  And then I think we can

19    take care of the Rule 11 colloquy that way for the

20    corporation.

21              I would feel more comfortable and, in fact,

22    I'm going to require that, and I don't think you all

23    have any problems with that.

24              MR. SREBNICK:  That's fine.  Thank you.

25              THE COURT:  Is that okay, Mr. Shapiro?
```

```
 1              MR. SHAPIRO:  Absolutely, your Honor.

 2              THE COURT:  So, Mr. Diveroli, you're still

 3    under oath.

 4              Do you understand that, sir?

 5              THE DEFENDANT:  I do, ma'am -- your Honor --

 6    your Honor.  Sorry.

 7              THE COURT:  That's fine.

 8              And what is your position with AEY, Inc.?

 9              THE DEFENDANT:  President and 100 percent

10    shareholder.

11              THE COURT:  And AEY, Inc., is a corporation in

12    the state of Florida that was incorporated in the state

13    of Florida.  Correct?

14              THE DEFENDANT:  That is correct.

15              THE COURT:  And do you understand that the

16    corporation has -- for certain purposes, is considered

17    a person under the law and has all the rights of a

18    person under the law, including the right to a trial,

19    the right to confront witnesses against it, the right

20    to appeal, other than the right to have an attorney

21    appointed?

22              A corporation would not have the right to have

23    an attorney appointed.  But do you understand that,

24    other than that, the corporation has the same rights

25    that I detailed to you as an individual?
```

```
 1                THE DEFENDANT:  I understand that, your Honor.

 2                THE COURT:  And you understand that the

 3      corporation was charged as a party in Count 1 of the

 4      superseding indictment, the same count that you pled

 5      guilty to?

 6                THE DEFENDANT:  I understand that, your Honor.

 7                THE COURT:  You signed the factual proffer on

 8      behalf of the corporation.  Is that correct?

 9                THE DEFENDANT:  I did.

10                THE COURT:  That's your signature?

11                THE DEFENDANT:  Yes, it is, your Honor.

12                THE COURT:  Was that signed freely and

13      voluntarily?

14                THE DEFENDANT:  Absolutely.

15                THE COURT:  And do you admit or not admit the

16      facts as stated in the factual proffer and as detailed

17      in the prior hearing that the Government detailed

18      concerning your plea?  Do you admit or not admit those

19      facts as they relate to the corporation?

20                THE DEFENDANT:  I admit those facts as they

21      relate to the corporation.

22                THE COURT:  And on behalf of the corporation,

23      how do you wish to plead to Count 1 of the superseding

24      indictment?  Guilty or not guilty?

25                THE DEFENDANT:  Guilty, your Honor.
```

1          THE COURT:  And as the corporate

2    representative of the corporation, are you pleading

3    guilty because the corporation is indeed guilty?

4          THE DEFENDANT:  That would be correct.

5          THE COURT:  Do you understand that the maximum

6    possible penalty that may be imposed against the

7    corporation is five years' probation?

8          THE DEFENDANT:  I understand that, your Honor.

9          THE COURT:  And do you understand that, in

10   addition to a term of probation, the Court may impose a

11   fine of up to $500,000 or twice the amount of gross

12   loss or gross gain involved in Count 1?

13         THE DEFENDANT:  I understand that, your Honor.

14         THE COURT:  And do you also understand that

15   the Court may order restitution and a special

16   assessment in the amount of $400 will be imposed upon

17   the corporation?

18         THE DEFENDANT:  I understand that, your Honor.

19         THE COURT:  Do you understand that the

20   provisions of the sentencing guidelines promulgated by

21   the United States Sentencing Commission will advise the

22   Court in this matter for the corporation as well?

23         THE DEFENDANT:  Yes.  I understand that, your

24   Honor.

25         THE COURT:  Have you and Mr. Shapiro talked

1   about how the sentencing guidelines might apply to the

2   case against the corporation?

3           THE DEFENDANT:  We've discussed it at length

4   and -- yes, we have.

5           THE COURT:  And do you understand that the

6   Court will not be able to determine the advisory

7   guideline range for the sentence of the corporation

8   until after the advisory presentence investigation

9   report has been completed and both the corporation's

10  attorney and the Government have had an opportunity to

11  read the advisory presentence investigation report and

12  file any objections to the report?

13          THE DEFENDANT:  That's clear, your Honor.

14          THE COURT:  Do you understand that the Court

15  will consider all of the sentencing factors provided by

16  law, including the sentencing guidelines?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Is the plea of guilty by the

19  corporation being made freely and voluntarily?

20          THE DEFENDANT:  Absolutely, your Honor.

21          THE COURT:  Has anyone forced or threatened or

22  coerced the corporation to plead guilty?

23          THE DEFENDANT:  Not in any way.

24          THE COURT:  Other than the representations

25  made in the plea agreement to the corporation, has

```
 1  anyone made any other representations to convince the
 2  corporation to plead guilty?
 3          THE DEFENDANT:  No, your Honor.
 4          THE COURT:  Are you satisfied with the
 5  services of Mr. Shapiro?
 6          THE DEFENDANT:  More than satisfied.
 7          THE COURT:  Have you had adequate time, as the
 8  corporate representative, to fully confer with him and
 9  he with you about this charge, these proceedings and
10  all matters relating to this charge?
11          THE DEFENDANT:  Yes, I have, your Honor.
12          THE COURT:  Turning now to the plea agreement,
13  I'm just going to go through those provisions of the
14  plea agreement that we haven't reviewed already.
15          The Government agrees to seek dismissal of
16  Counts 2 through 85 against the corporation and the
17  forfeiture allegations of the superseding indictment as
18  to the corporation after sentencing.
19          Is this your signature on the corporate
20  resolution, sir, authorizing the corporation to plead
21  guilty?
22          THE DEFENDANT:  Yes, it is, your Honor.
23          THE COURT:  Turning now back to the plea
24  agreement, the corporation shall not through a change
25  of name, business reorganization, sale or purchase of
```

1     assets, divestiture of assets or any similar action

2     seek to avoid the obligations and conditions set forth

3     in the plea agreement.

4          The plea agreement, together with all the

5     obligations and terms hereof, shall inure to the

6     benefit of and bind partners, shareholders, assignees,

7     successors in interest or transferees of the

8     corporation.

9          The corporation recognizes that the Court has

10    the authority to impose any sentence within and up to

11    the statutory maximum authorized by law and that the

12    corporation may not withdraw its plea solely as a

13    result of the sentence imposed.

14         The Government reserves the right to inform

15    the Court and the probation office of all facts

16    pertinent to the sentencing process, including all

17    relevant information concerning the offenses committed,

18    whether charged or not, as well as concerning the

19    corporation and the corporation's background.

20         Subject only to the express terms of any

21    agreed-upon sentencing recommendations contained in

22    this agreement, the Government further reserves the

23    right to make any recommendation as to the quality and

24    quantity of punishment.

25         The Government and the corporation agree that,

1    although not binding on the probation office or the

2    Court, you will jointly recommend that the Court impose

3    a sentence within the advisory guideline range produced

4    by application of the guidelines and that the Court

5    shall neither vary upward nor vary downward from that

6    range.

7              Although not binding on the probation office

8    or the Court, the Government and the corporation

9    further agree that, except as otherwise expressly

10   contemplated in this plea agreement, you will jointly

11   recommend that the Court neither depart upward nor

12   depart downward under the guidelines when determining

13   the advisory guideline range in this case.

14             THE DEFENDANT:  Excuse me.

15             The Court may or may not?  The --

16             THE COURT:  Well, you -- the corporation and

17   the Government will jointly recommend that the Court

18   neither depart upward nor downward.  It doesn't bind

19   the Court.

20             THE DEFENDANT:  Understood.

21             THE COURT:  But that's the recommendation by

22   the parties.

23             THE DEFENDANT:  Thank you, your Honor.

24             THE COURT:  However, if the Court does not

25   accept the joint sentencing recommendations, then the

 1   United States and the corporation shall be released

 2   from the agreement not to vary from the guidelines.

 3        The Government agrees it will recommend that

 4   the Court reduce by two levels the sentencing guideline

 5   level applicable to the corporation's offense under

 6   Section 8C2.5(g) of the guidelines, based upon AEY's

 7   recognition and affirmative and timely acceptance of

 8   personal responsibility.

 9        The Government will not be required to make

10   this sentencing recommendation if the corporation,

11   through the corporate representative, fails or refuses

12   to make a full, accurate and complete disclosure of the

13   circumstances surrounding the relevant offense conduct

14   to the probation office and the Government, if it is

15   found -- the corporation is found to have

16   misrepresented facts to the Government prior to

17   entering the plea agreement or commits any misconduct

18   after entering into the plea agreement, including, but

19   not limited to, committing a state or federal offense,

20   violating any term of release or making false

21   statements or misrepresentations to any governmental

22   entity or official.

23        The Government agrees not to seek additional

24   criminal prosecutions against AEY for violations of law

25   associated with its performance of United States

1    Department of Defense contract designated number

2    W52P1J-07-D0004.

3           This agreement does not provide or promise any

4    waiver of any civil or administrative actions,

5    sanctions or penalties that may apply, included, but

6    not limited to, fines, penalties, claims for damages,

7    suspension, debarment, listing, licensing, injunctive

8    relief or remedial action.

9           AEY and the Government agree that, although

10   not binding on the probation office or the Court, you

11   will jointly recommend that the Court impose the

12   following sentence:  A term of probation of two years

13   and a criminal fine of $500,000 made payable to the

14   United States District Court to be paid at time of

15   sentencing.

16          The corporation is aware that Title 18, United

17   States Code, Section 3742, affords the corporation the

18   right to appeal the sentence imposed in this case.

19          The corporation is also aware that Title 18,

20   United States Code, Section 2255, affords the

21   corporation the right to collaterally attack the

22   conviction or sentence imposed in this case.

23          I have to think about that.

24          Acknowledging this, in exchange for the

25   undertakings made by the United States in this plea

agreement, the corporation waives all rights conferred

by Section 3742 to appeal any sentence imposed,

including any restitution order, or to appeal the

manner in which sentence was imposed, unless the

sentence exceeds the maximum permitted by statute or as

a result of an upward departure or upward variance from

the guideline range the Court establishes at

sentencing.

The corporation waives all rights conferred by

Section 2255 to collaterally attack the conviction, any

sentence imposed, including any restitution order or

the manner in which sentence was imposed, unless the

sentence exceeds the maximum permitted by statute or as

a result of an upward departure or upward variance from

the guideline range the Court establishes at

sentencing.

AEY further understands that nothing in this

agreement shall affect the Government's right and/or

duty to appeal as set forth in Title 18, United States

Code, Section 3742(b).

However, if the Government appeals the

corporation's sentence under Section 3742(b), the

corporation shall be released from its waiver of

appellate rights.

By signing this agreement, AEY acknowledges

1  that its corporate representative has discussed the

2  appeal and collateral attack waiver set forth in this

3  agreement with its attorney.

4       AEY further agrees, together with the

5  Government, to request that the Court enter a specific

6  finding that AEY's waiver of its right to appeal the

7  sentence to be imposed in this case and to collaterally

8  attack the conviction or sentence to be imposed in this

9  case was knowing and voluntary.

10      AEY is aware that sentence has not yet been

11 determined by the Court.  AEY is also aware that any

12 estimate of the probable sentencing range or sentence

13 that it may receive, whether that estimate comes from

14 its attorney, the Government or the probation office,

15 it is a prediction, not a promise, and is not binding

16 on the Government, the probation office or the Court.

17      AEY understands further that any

18 recommendation that the Government makes to the Court

19 as to sentencing, whether under this agreement or

20 otherwise, it is not binding on the Court and the Court

21 may disregard the recommendation in its entirety.

22      AEY understands and acknowledges that it may

23 not withdraw its plea based upon the Court's decision

24 not to accept a sentencing recommendation made by AEY,

25 the Government or a joint recommendation made by AEY

```
 1    and the Government.

 2             Is this your signature on the plea agreement

 3    for AEY, Mr. Diveroli?

 4             THE DEFENDANT:  That would be correct, your

 5    Honor.

 6             THE COURT:  And did you read the agreement

 7    before you signed it on behalf of the corporation?

 8             THE DEFENDANT:  Several times, your Honor.

 9             THE COURT:  Did you discuss fully the

10    agreement with Mr. Shapiro, the attorney for the

11    corporation, before you signed it?

12             THE DEFENDANT:  I have.

13             THE COURT:  And did you understand all the

14    terms of the plea agreement before you signed it?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Do you understand that, in

17    Paragraph 13 on pages 5 and 6, that the corporation is

18    giving up its right to appeal its sentence and to

19    collaterally attack its conviction and/or sentence?

20             THE DEFENDANT:  I understand that we are

21    waiving that right at this time, your Honor.

22             THE COURT:  And have you fully discussed these

23    appellate rights and collateral attack rights with the

24    corporate attorney, Mr. Shapiro?

25             THE DEFENDANT:  Yes, I have.
```

1          THE COURT:  And are you entering into this

2     waiver -- is the corporation entering into this waiver

3     of its appellate rights and collateral attack rights

4     freely and voluntarily?

5          THE DEFENDANT:  Yes, it is.

6          THE COURT:  The terms that I summarized to

7     you:  Are those the terms of the plea agreement between

8     the United States of America and AEY, Inc.?

9          THE DEFENDANT:  That is correct.

10         THE COURT:  And has anyone made any other or

11    different promises or assurances to the corporation in

12    an effort to induce the corporation to enter into this

13    plea agreement and enter a plea of guilty in this case?

14         THE DEFENDANT:  No, they have not.

15         THE COURT:  Has anyone threatened the

16    corporation or tried in any other way to force the

17    corporation to enter into this plea agreement and enter

18    a plea of guilty in this case?

19         THE DEFENDANT:  No, they have not.

20         THE COURT:  Do you understand that, if I

21    accept the plea of the corporation and the sentence

22    that I give it is more severe than the corporation

23    expected, the corporation will still be bound by its

24    plea agreement, still be bound by its plea of guilty

25    and will have no right to withdraw them?

1          THE DEFENDANT:  I understand that, your Honor.

2          THE COURT:  Mr. Shapiro, is this your

3     signature on the plea agreement?

4          MR. SHAPIRO:  Yes, your Honor.

5          THE COURT:  And, Ms. Fernandez, your signature

6     as well?

7          MS. DELGADO FERNANDEZ:  Yes, your Honor.

8          THE COURT:  Mr. Shapiro, are you satisfied

9     that pleading guilty to the charge is in the best

10    interest of the corporation, considering all the

11    circumstances in this case?

12         MR. SHAPIRO:  Yes, Judge.

13         THE COURT:  And do you feel there would be

14    sufficient evidence upon which to convict AEY of this

15    charge?

16         MR. SHAPIRO:  Yes, I do.

17         THE COURT:  Mr. Diveroli, do you have any

18    questions, sir, about the possible consequences of the

19    plea of guilty for the corporation?

20         THE DEFENDANT:  No, I do not, your Honor.

21         THE COURT:  Do you understand fully all of the

22    possible consequences of the plea of guilty for the

23    corporation?

24         THE DEFENDANT:  I do, your Honor.

25         THE COURT:  It is the finding of the Court in

 1   the case of United States of America versus AEY, Inc.,

 2   that the Defendant Corporation, AEY, Inc., has entered

 3   into a waiver of its appellate rights and collateral

 4   attack rights knowingly, freely and voluntarily after

 5   full consultation with its attorney and without

 6   coercion or duress.

 7        It is further the finding of the Court in the

 8   case of United States of America versus AEY, Inc., that

 9   the Defendant Corporation can enter an informed plea

10   based upon the corporate resolution that was signed by

11   Efraim Diveroli as the sole shareholder and director

12   of AEY, Inc., and by his answers here as the corporate

13   representative that the corporation is aware of the

14   nature of the charge and the consequences of the plea

15   and that the plea of guilty is a knowing and voluntary

16   plea supported by an independent basis in fact

17   containing each of the essential elements of the

18   offense.

19        The plea is, therefore, accepted and the

20   corporation is now adjudicated guilty of Count 1 of

21   the superseding indictment.

22        A written advisory presentence investigation

23   report will be prepared by the probation office for the

24   corporation to assist the Court in sentencing.

25        You will be asked, Mr. Diveroli, on behalf of

1  the corporation, to give information for the report,

2  and your attorney may be present if you wish.

3          The Court shall permit the corporation, its

4  representative and counsel to read the advisory

5  presentence investigation report, file any objections

6  to the report before the sentencing hearing.

7          The corporation and its counsel shall be

8  afforded the opportunity to speak on behalf of the

9  corporation at the sentencing hearing.

10          At this time I'm going to refer AEY, through

11  its corporate representative, Efraim Diveroli, to the

12  probation office for an advisory presentence

13  investigation report.

14          We need a sentencing date and time, which

15  would be -- why don't we do the same date and time as

16  the individual, Mr. Diveroli, which was....

17          THE COURTROOM DEPUTY:  November 10th at

18  2:00 p.m.

19          THE COURT:  Anything further that we need to

20  take up?

21          MR. SHAPIRO:  Not at this time, your Honor.

22          MS. DELGADO FERNANDEZ:  Nothing from the

23  Government, your Honor.

24          MR. SREBNICK:  Thank you.

25          THE COURT:  Okay.  Thank you.

1          We're in recess until 2:00.

2          (End of proceedings.)

3                  C E R T I F I C A T E

4

5          I hereby certify that the foregoing is an

6    accurate transcription of the proceedings in the

7    above-entitled matter.

8

9

10   _____       /s/Lisa Edwards
           DATE          LISA EDWARDS, CRR, RMR
11                       Official United States Court Reporter
                         400 North Miami Avenue, Twelfth Floor
12                       Miami, Florida 33128
                         (305) 523-5499
13

14

15

16

17

18

19

20

21

22

23

24

25