UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20574-CR-LENARD/GARBER(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RALPH MERRILL,

    Defendant.

_____/

**NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER THE INEXTRICABLY INTERTWINED DOCTRINE OR, ALTERNATIVELY, FED. R. EVID. 404(b)**

    The United States of America, by and through the undersigned counsel, hereby gives notice of its intent to introduce evidence under the inextricably intertwined doctrine or, alternatively, Fed. R. Evid. 404(b). The defendant is hereby on notice that all evidence made available for inspection, as well as all statements disclosed herein or in any discovery response, may be offered in the trial of this case, under Fed. R. Evid. 404(b) or otherwise, including the inextricably-intertwined doctrine. At a minimum, the Government intends to introduce the evidence discussed below.

**I.**    **Prior Business Relationship.**

    The Government intends to introduce, under the inextricably intertwined doctrine, evidence of Ralph Merrill's prior business dealings with Efraim Diveroli and/or AEY, Inc. Among other things, these prior business dealings are "basic 'structural' evidence" that will explain the origins of the conspiracy, as well as "the roles and motives of the various co-conspirators" during the charged conspiracy. *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992). This evidence will explain how Diveroli knew Merrill and why he turned to Merrill for financing,

sourcing and other assistance with the contract at issue in the superseding indictment. *United States v. Costa*, 691 F.2d 1358, 1360-61 (11th Cir. 1982) (*per curiam*). This evidence will further complete the story for the jury by showing that Merrill's and Diveroli's collaboration on the contract charged in the superseding indictment was not an "isolated act[], but rather [was] part of a series of transactions involving the same principal actors, in the same roles, employing the same *modus operandi*." *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995). Indeed, their business relationship became so close that, as the Government will show, Merrill held himself out on numerous occasions as "V.P. of AEY" and described himself as "a partner with Ephraim" and his own company, Vector Arms, as AEY's "sister company." This evidence will also show why Merrill and Diveroli reached out to Henri Thomet to obtain the ammunition charged in the superseding indictment.

Merrill and Diveroli worked together on numerous other contracts and U.S. Government contracts, including but not limited to, W914NS-05-D-9012, W912PE-05-P-7593, W914NS-05-D-9035, W914NS-05-Q-9090, and W914NS-05-Q-9092. To source some of these contracts, Merrill reached out to Thomet, who was his personal contact and who was the same person who later acted as middle-man when the defendants purchased the ammunition charged in the superseding indictment. Merrill also reached out to other of his personal contacts in order to obtain 7.62x39 mm ammunition, the same type charged in the superseding indictment. For example, on February 22, 2006, Merrill wrote, "My Czech guy has 29,000,000 rounds [of 7.62x39 mm] @ 4 cents = $1,160,000[,]" and the next day, he offered "100 million rounds of quality 7.62x39" to a U.S. Government employee. Illustrating Merrill's role in sourcing the contracts on which he and Diveroli collaborated, Merrill described himself to a U.S. Government employee as "the contact with the source in Europe." As he did with respect to the contract charged in the superseding indictment,

Merrill provided financing for these earlier contracts. For example, on October 9, 2005, Merrill wrote that he had wired $2,191,745 to Thomet's company for goods under one of the prior contracts. And as he did with respect to the contract charged in the superseding indictment, Merrill worked on numerous other logistical issues and provided Diveroli with advice on numerous issues.

In the process of sourcing some of these contracts, there arose discussions of prohibited sources, including China. For example, Thomet's company advised Merrill and Diveroli that they could obtain helmets from China "but we feel this origin is not safe and certainly not politically clean." With respect to another contract, in which Thomet's company was also involved, Merrill opined that India might be added to an "exempt list."

Merrill and Diveroli also made false statements with respect to some of the contracts described above. For example, Merrill and Diveroli provided false explanations (*e.g.*, on December 27, 2005, Merrill wrote, "We told him [the U.S. Government official] too many lies") and false documents (*e.g.*, on December 24, 2005, Merrill wrote that he needed to "clean" a document from a third-party before it was submitted to the U.S. Government) in order to avoid termination when they failed to deliver as promised under the contracts.

As described above, evidence regarding Merrill's prior business dealings, including his prior false statements and fraudulent actions, with Diveroli are admissible under the inextricably intertwined doctrine. Alternatively, this evidence is admissible under Fed. R. Evid. 404(b). The discussions regarding prohibited sources are relevant to show Merrill's knowledge that China was a prohibited source, his intent to conceal that the ammunition was Chinese, and that he did not accidentally or mistakenly conceal the ammunition's Chinese origin. Similarly, the previous false statements and fraudulent actions are relevant to Merrill's motive and intent to enter into an agreement to make false or fraudulent statements and to show that he did not accidentally or

3

mistakenly enter into that agreement. The discussions with suppliers regarding 7.62 ammunition are relevant to rebut any defense that MEICO was the only source for this type of ammunition.

**II.     The Contract At Issue.**

The Government intends to introduce, under the inextricably intertwined doctrine, evidence relating to the contract at issue that pre-dates the conspiracy. For example, the Government intends to introduce documents the defendants supplied in support of their bid for the contract, evidence regarding the sources that the defendants contacted in order to obtain the 7.62 ammunition for the contract, evidence regarding the manner in which the defendants financed the contract, and similar types of evidence. All of this evidence arose out of the same transaction or series of transactions as the charged offenses and are necessary to "complete the picture" for the jury as to how the charged conspiracy arose. *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983).

Included among this evidence are false statements and material omissions made by Merrill during the bidding process. For example, in serving as a reference, Merrill failed to disclose during the bidding process that he would also be profiting from the contract if it were awarded to AEY. Merrill also falsely claimed that he and Diveroli had successfully imported ammunition into the U.S. when, in fact, they had obtained a permit but did not import the ammunition. Merrill also overstated the value of the collateral he pledged in support of AEY's performance.

Alternatively, this evidence is admissible under Fed. R. Evid. 404(b) to show Merrill's motive and intent to make false statements in order to obtain and retain the charged contract and to show the absence of mistake or accident. For example, Merrill's investment and expected profit in the contract are related to his motive and intent to agree to make false and fraudulent statements (indeed, Merrill admitted as much to an agent), as do the false statements and material omissions he made in order to win the contract. This evidence also shows absence of mistake or accident. As

noted above, discussions with suppliers regarding 7.62 ammunition are relevant to rebut any defense that MEICO was the only source for this type of ammunition.

**III.     Familiarity With Trade Prohibitions And License And Registration Requirements.**

The Government intends to introduce, under the inextricably intertwined doctrine, evidence to show that Merrill was familiar with trade prohibitions and the requirement to obtain registrations and/or licenses in order to engage in certain transactions.  For example, on December 22, 2005, Merrill wrote that AEY would have to "get registered as an exporter" if they pursued a particular deal.  As also discussed above, Merrill received an email about China being "not politically clean" and wrote an email about India being added to an "exempt list."  This evidence is inextricably intertwined as it helps complete the story as to Merrill's understanding of the trade prohibitions at issue in the superseding indictment and helps to explain his involvement in the emails to the State Department set forth in the Overt Acts of the superseding indictment.  Alternatively, this evidence is admissible under Fed. R. Evid. 404(b) because it shows Merrill's knowledge and intent to conceal the ammunition's Chinese origin in light of the DFARS prohibition, as well as absence of mistake or accident.

**IV.     Identity.**

The Government intends to introduce, under the inextricably intertwined doctrine or, alternatively, Fed. R. Evid. 404(b), documents to prove the identity of the person using Merrill's email address.  *See, e.g.*, YGAC-005588-5589; YGAC-006150.

Respectfully submitted,

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

/s/ *Eloisa D. Fernandez*
Eloisa Delgado Fernandez
Assistant United States Attorney
Florida Bar No. 0999768
eloisa.d.fernandez@usdoj.gov
U. S. Attorney's Office
99 N.E. 4th Street, 8th Floor
Miami, Florida 33132
Telephone: (305) 961-9025
Facsimile:  (305) 536-4675


/s/ *James M. Koukios*
James M. Koukios
Trial Attorney
Court No. A5500915
james.koukios@usdoj.gov
U. S. Department of Justice
Fraud Section, Criminal Division
1400 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 616-5535
Facsimile:  (202) 514-6118

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 19, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing.

/s/ *James M. Koukios*
James M. Koukios
Trial Attorney
U.S. Department of Justice